# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MOLINA, ) | 1:08cv01207 DLB |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S |
| ) | SOCIAL SECURITY COMPLAINT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## BACKGROUND

Plaintiff Victor Molina ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial application in February 2003, alleging disability since January 14, 1999, due to back problems, "hearing voices" and depression. AR 135-138, 144-150. Plaintiff's

---

[1] On September 16, 2008, the Honorable Oliver W. Wanger reassigned this action to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

application was denied initially, on reconsideration and after a hearing by an Administrative Law Judge ("ALJ"). AR 47-51, 79-86, 91-94, 651-658. On July 20, 2007, the Appeals Council granted Plaintiff's request for review and remanded the action for a new hearing. AR 87-90.

On January 9, 2008, ALJ Christopher Larsen held a hearing. AR 610-650. He denied benefits on January 25, 2008. AR 15-25. The Appeals Council denied review on June 9, 2008. AR 11-13.

Hearing Testimony

ALJ Larsen held a hearing on January 9, 2008, in Fresno, California. Plaintiff appeared with his attorney, Melissa Proudian. Vocational expert ("VE") Jose Chaparro also appeared and testified. AR 610.

Plaintiff testified that was 40 years old. He has two adult children, but could not remember their ages. Plaintiff lives with his sister. AR 615-616. He has a driver's license and drives when he can, about twice a month. AR 617-618. He completed the eighth grade and can read and write a little, though he cannot read a newspaper because it is hard for him to understand. AR 618-619. He last worked 10 years ago as a dishwasher and stopped when he slipped and fell. AR 620. Prior to that position, Plaintiff worked as a landscaper and baker's helper. AR 621-622.

Plaintiff explained that he could not work because of back pain and the voices that he hears. AR 623. His back pain resulted from the slip and fall injury. The pain shoots down his right leg constantly. AR 632. He has taken two types of medication that lower the pain but don't make it go away completely. AR 624. He rated his pain at an 8 out of 10 when he's taking the medication. AR 625. Plaintiff has not had epidural injections and testified that neither physical therapy nor a TENS unit helped. AR 626. He uses a cane that a doctor prescribed about six years ago. AR 627-628. He also uses a back brace that he was given in 1998, though it doesn't take the pain away. AR 628.

Plaintiff testified that his back pain affects his ability to sit. He thought he could sit for about 15 minutes before needing to shift around and about 30 minutes before needing to get up.

He could stand for about 30 minutes and walk about one block. Plaintiff thought that he could lift about 10 pounds. AR 629-630.

During the day, Plaintiff rests for about two hours. AR 631. He is able to dress himself and bathe, though he has trouble bending over and reaching out at shoulder height. AR 632-633. He does not cook, clean, do laundry or grocery shop, though he testified that he could do these things if he had to. AR 639. He also goes to church. AR 640.

Plaintiff further testified that he hears voices once or twice a week telling him to "kill them." AR 634. He is on medication and receives mental health treatment. AR 635. The medication causes him to shake most of the time and scratch, and also causes constipation and headaches. AR 640-641. Plaintiff believed that the medication helped, though he still hears voices. AR 642. He has difficulty being around people because he feels like someone is always trying to kill him or saying something he doesn't like. AR 643. Plaintiff has suicidal thoughts once or twice a month. AR 643. He hasn't told his doctor how often he has these thoughts because he was never asked. Plaintiff was hospitalized for three days, but he could not remember when. AR 644.

Plaintiff also testified that he is anxious all the time, which affects his ability to concentrate. AR 636. He explained that he loses concentration fast, so that when he reads and tries to understand what he's reading, he can't remember what he just finished reading. AR 636. When the ALJ asked him what type of things he reads since he testified earlier that he had a difficult time reading, he said that he reads to try and focus and help himself. AR 636-637. He is able to concentrate enough to watch a two hour movie. AR 638.

Plaintiff feels depressed most of the day, which causes problems adjusting and understanding. AR 637-638.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk for six hours and sit for six hours. This person could understand, remember and carry out simple one or two step job instructions. The VE testified that this person could perform Plaintiff's past work as a baker's helper as performed, but not as

described by the Dictionary of Occupational Titles. AR 646. He could also perform the positions of weeder-thinner, window cleaner and industrial sweeper-cleaner. AR 646-647.

If this person could not maintain concentration and attention reliably through an eight hour day, he could not perform any work. AR 647.

If this person could not complete an eight hour day or a forty hour work week without interruption from psychologically-based symptoms, this person could not work. AR 647.

If the person in the first hypothetical had to have additional breaks throughout an eight hour day from one to two hours a day, this person could not work. AR 648.

Medical Record

In June 2001, Plaintiff was seen at Fresno County Mental Health and reported that he was frustrated and nervous about his SSI appeal. He had quit school because he couldn't concentrate and thought he was psychotic. AR 346.

In February 2002, a case manager at Fresno County Mental Health recommended that Plaintiff be moved to medication services only because he did not participate in any case management recommendations to attend school or work part-time. He was insistent on winning his SSI appeal that had been denied three times. AR 340.

From March 2002 through June 2003, Plaintiff was seen at University Medical Center for complaints of low back pain. He was taking Vicodin, naproxen and neurontin and was using a cane. AR 314, 316, 318, 320, 326, 372.

Plaintiff continued treating at Fresno County Mental Health through April 2003. Generally, he was anxious and depressed and reported auditory hallucinations. He denied suicidal ideations. His medications were effective and he had no side effects. AR 331-336, 338.

On April 14, 2003, Plaintiff saws Charles House, M.D., for a consultive psychiatric evaluation. Plaintiff complained that he had physical pain, heard voices and suffered from depression. He was unable to concentrate because of the pain and voices. Specifically, Plaintiff reported episodic depression and crying spells. He denied suicidal ideation, though he said that he is sometimes so fatigued that he wished he was not alive. He reported sleeping problems but stated that he's been sleeping significantly better with the use of psychotropics. Plaintiff reported

that he began hearing voices in 1999. The voice is a male voice that tells him to kill himself and kill everybody. Plaintiff said he only hears voices when he is alone. In 1999, Plaintiff was hospitalized after a "nervous breakdown," though he could not provide precipitating events. AR 275-276.

Plaintiff indicated that he would have a hard time working because of pain and because the voices keep him from concentrating. Plaintiff reported that he was taking Zoloft and Seroquel, which significantly improved his sleep and partially diluted his alleged auditory hallucinations. AR 277. He reported that during the day, he takes showers, tries to help his mother, prepares a little food and maybe goes out of the house, but most of the day he stays in bed because of pain. AR 277-278.

On examination, Plaintiff was alert, responsive and oriented to person, place and time. Gait was slow and aided by a cane. Eye contact was 35 percent. His attitude was cooperative but somewhat guarded. Plaintiff's speech was productive, though his vocabulary was below average. His thinking was logical and organized. Plaintiff attempted to manipulate the conversation to focus on his back pain and the stress of his psychiatric problems, which are the symptoms that he believes warrant disability status. Plaintiff's mood was depressed. AR 278.

Mental status examination revealed intact cognitive functioning with no evidence of an impairment in concentration, attention or memory. AR 279. He was able to maintain good concentration, persistence and pace. AR 280. Plaintiff's intellectual level was below average without evidence of a cognitive impairment. Auditory hallucinations were acknowledged, but not observed during the consultation. Plaintiff's problem solving skills were impaired as a function of lowered intellectual potential, a psychiatric disorder or an attempt to skew data in a direction that would facilitate disability status. AR 281.

Dr. House diagnosed depressive disorder, not otherwise specified, with psychotic features from history but unobserved clinically, and back pain per claimant, but lacking medical validation. Prognosis for the depressive disorder was unknown, as symptoms may be exaggerated for the purpose of obtaining disability status. AR 281.

Dr. House opined that Plaintiff could perform simple, repetitive tasks and could perform two and three step problem resolution. He may have some difficulty with more complex and detailed tasks. He would be able to accept supervision and could interact appropriately with coworkers and the public. Plaintiff could complete a full day's activity without interruption from psychiatric problems as long as he is compliant with medication and treatment. AR 281-282.

On April 21, 2003, Plaintiff saw Troy Smith, M.D., for a consultive orthopedic consultation. Plaintiff complained of low back pain with right leg pain down to the foot. He has used a cane since 1997. Plaintiff was in no acute pain or distress and could get on and off the examination table without difficulty. Plaintiff walked without evidence of a limp. His cane appeared to be fairly new, even though Plaintiff said had has used it for 5 or 6 years. AR 283-284.

Range of motion was normal in his cervical spine. There was moderate tenderness to percussion in the lumbar area and moderate tenderness of the right sciatic notch area. Plaintiff could flex to 10 degrees with pain. Straight leg raising was to 80 degrees bilaterally without pain. Laseque's sign was slightly positive on the right. There was no evidence of joint pain, swelling, tenderness or inflammation. Measurements of Plaintiff's arm, forearm, thigh and calf were equal on the right and left. Grip strength and motor strength were normal. Sensation and reflexes were normal. AR 284-286.

Dr. Smith diagnosed low back pain due to unknown etiology. He opined that Plaintiff could not perform work that required repeated bending or heavy lifting. He could lift and carry 50 pounds occasionally and 25 pounds frequently. He could sit, stand and walk six hours out of an eight hour day. Plaintiff could kneel, squat and climb stairs on an infrequent basis. AR 286.

April 21, 2003, x-rays of Plaintiff's lumbar spine were negative. AR 288.

On May 3, 2003, State Agency physician Keith M. Quint, M.D., opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for about six hours and sit for about six hours. He could frequently climb ramps and stairs, balance, stoop and crouch, and could occasionally climb ladders, ropes and scaffolds, kneel and crawl. AR 295-303.

On May 7, 2003, State Agency psychiatrist Harvey Biala, M.D., opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. Plaintiff could understand and remember short step and multiple step instructions, could sustain concentration and maintain attention in two hour increments and could complete a normal workday or workweek. Plaintiff could interact appropriately with coworkers and the public and could accept the usual amount of supervision. This opinion was affirmed by Archimedes Garcia, M.D., on August 7, 2003. AR 304-306.

In a May 2003 Psychiatric Review Technique Form, Dr. Biala found that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace, and was mildly restricted in activities of daily living and maintaining social functioning. AR 307-310.

In June 2003, Plaintiff reported that his anxiety and depression had increased, though he was sleeping and eating well with his medications. He reported auditory hallucinations and denied suicidal ideations. AR 329.

Plaintiff was seen at University Medical Center on November 20, 2003. He complained that his pain was a constant 10 out of 10, 9 out of 10 with medication. His movements did not show intense pain and his strength was poor due to poor effort. His symptoms were not likely correlated to physiology in his back and were partially psychiatric in nature. AR 365.

On November 27, 2003, Plaintiff was seen at the emergency room after he said he was suicidal when he was being booked into jail on domestic violence charges. AR 357, 380. No distress was noted and he was discharged to jail. AR 358. The psychiatrist who examined him noted that although Plaintiff complained he was suicidal, his behavioral pattern and presentation did not fit with such a finding. Plaintiff was thought to be malingering to avoid the consequences. AR 381.

Plaintiff attended physical therapy in January and February 2004. He demonstrated poor compliance and his goals were not met. AR 352.

In March 2004, Plaintiff complained that his pain was a 9 out of 10 and reported that he was seeking total disability so he could get other government benefits. The doctor informed him

that there was no concrete origin for his back pain. The doctor refused to say that Plaintiff was disabled because there was no supporting evidence. AR 351.

In June 2004, Plaintiff was seen at Fresno County Mental Health and reported that he was better. He was less anxious and less depressed and had fewer auditory hallucinations. His medications were effective. AR 367. He continued his treatment with relatively no changes through December 2004. AR 453, 454, 458.

Plaintiff received treatment for lower back pain from September 2004 through May 2007 at University Medical Center. He was also seen numerous times in the emergency room, often for Vicodin refills. AR 460, 464, 467, 471, 477, 484, 487, 496-497, 500, 505, 508, 513, 523, 537, 554, 566, 572, 580, 584-585.

On January 27, 2005, Plaintiff saw Shireen R. Damania, M.D., for a psychiatric evaluation. Plaintiff reported that he was applying for benefits because of low back pain and because he heard voices. He reported that his depression was a result of his back pain and his situation. Plaintiff stated that he basically lies down all day because of the pain. AR 386-390.

On examination, Plaintiff appeared to be in some mild discomfort. His mood was mildly depressed. He denied suicidal ideations. His impulse control and frustration tolerance were mildly impaired and he became somewhat irritable at times. Plaintiff reported that voices wake him up at night, but he did not elaborate. His memory was intact and his attention span was within normal limits. Insight and judgment were fair and Plaintiff was of average intelligence. AR 391.

Dr. Damania diagnosed mood disorder, due to general medical condition with depressive features, and psychotic disorder, not otherwise specified. Plaintiff could understand, remember and carry out simple one and two step job instructions in an unskilled setting. Although he was mildly irritable, he could respond appropriately to coworkers, supervisors and the public "for the most part." Any limitations in responding appropriately to usual work situations and dealing with changes in the work setting would be due to subjective allegations of chronic low back pain. AR 392.

Also on January 27, 2005, Plaintiff saw Rustom F. Damania, M.D., for a consultive physical examination. He complained of constant, sharp back pain that occasionally radiates to his right leg. During the examination, Plaintiff moaned and groaned, and twisted and turned in pain. Plaintiff would not move his neck past a certain point because he said it hurt. His lumbosacral spine was excessively sensitive to slight touch. He complained of a very severe level of pain though there were no spasms or deformities. Plaintiff used a cane and had difficulty getting on the table and lying prone on the table. Straight leg raising was positive in a lying position and normal in a sitting position. Reflexes were normal and there was no sensory impairment. Range of motion was significantly limited as Plaintiff said "he just cannot do it." Plaintiff walked with his cane and Dr. Damania did not "particularly observe any limp." He declined to walk on his toes and heels. AR 394-396.

Dr. Damania diagnosed chronic low back pain, with no clinical radiculopathy. Objectively, he did not find any major objective evidence for gross physical impairments, though subjectively Plaintiff appeared to be in constant distress. He suggesting that the subjective findings be correlated with x-rays or an MRI. AR 397.

On February 8, 2005, State Agency physician Archimedes Garcia, M.D., opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. Plaintiff could perform simple, repetitive tasks in two hour intervals, finish a workday and maintain regular attendance. He could interact with coworkers or the public and would not have difficulty adapting to usual work. AR 398-400.

In an accompanying Psychiatric Review Technique Form, Dr. Garcia found that Plaintiff had mild restrictions in activities of daily, mild restrictions in maintaining social functioning and mild restrictions in maintaining concentration, persistence or pace. AR 404-417.

On February 16, 2005, State Agency physician Ernest Wong, M.D., opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for about six hours and sit for about six hours. He had no further limitations. AR 418-425. This opinion was affirmed on November 13, 2006. AR 425.

1 | Plaintiff continued his treatment at Fresno County Health Center from March 2005
through January 2007. He continued to complain of depression, anxiety and hearing voices. He denied suicidal ideations. AR 435-441, 443-444, 446, 448-450, 452.

X-rays dated August 21, 2006, were unremarkable. AR 482.

On September 6, 2006, Plaintiff underwent an MRI of his lumbar spine. The test revealed degenerative disc disease, but no significant central canal stenosis or neural foraminal narrowing. AR 480.

In October 2006, examination of Plaintiff's back revealed spasms and hypertrophy, as well as hypertrophy in his right leg. AR 477.

In February 2007, Plaintiff's physician recommended that he be evaluated for a TENS unit. AR 464.

In April 2007, Plaintiff reported that he was depressed everyday and that he was hearing voices and having bad dreams. He did not want to change his medications. AR 434.

On October 6, 2007, Plaintiff saw Abbas Mehdi, M.D., for a consultive orthopedic examination. Plaintiff reported that he had constant pain with difficulty walking and lifting things, though he remained independent in activities of daily living. Plaintiff had no significant difficulty getting on and off the examination table and he walked without evidence of a limp. Range of motion in his lumbar spine was reduced. He put forth little, to no, effort on grip testing. Motor strength was normal, as was sensation, muscle tone and bulk. There was no evidence of muscle atrophy. Dr. Mehdi diagnosed lumbar spine disease and chronic low back pain. He opined that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently. He could stand and walk six hours out of an eight hour day with normal breaks and could sit without restriction. AR 587-590.

On October 20, 2007, Plaintiff saw Ekram Michiel, M.D., for a consultive psychiatric examination. He complained of hearing voices nonstop and occasionally seeing things. He reported that he gets nervous around people and feels sad. His mood was depressed and his affect was restricted. He denied suicidal ideations. Dr. Michiel diagnosed depressive disorder, not otherwise specified. He opined that Plaintiff could maintain attention and concentration to

carry out one and two step job instructions. He could relate to, and interact with, coworkers, supervisors and the general public. Plaintiff could not carry out an extensive variety of technical and/or complex instructions. AR 594-597.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a depressive disorder, a psychotic disorder not otherwise specified and lumbar degenerative disc disease. AR 20. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds, 25 pounds frequently, sit, stand or walk for a total of six hours and understand, remember and carry out simple one or two step instructions. AR 21. With this RFC, the ALJ relied on the testimony of the VE and found that Plaintiff could perform his past relevant work as a baker helper. Alternatively, Plaintiff could perform a significant number of jobs in the national economy. AR 24-25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (a depressive disorder, a psychotic disorder not otherwise specified and lumbar degenerative disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform his past relevant work as a baker helper; or, alternatively, (5) retains the RFC to perform a significant number of jobs. AR 20-25.

Here, Plaintiff argues that the (1) ALJ's RFC finding is not supported by substantial evidence; and (2) ALJ's credibility determination is not supported by substantial evidence.

**DISCUSSION**

A.   RFC Analysis

Plaintiff first argues that rather than adopting the opinions of the three consulting examiners in formulating Plaintiff's RFC, the ALJ should have recontacted Plaintiff's treating psychiatrist from Fresno County Mental Health.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

Here, the ALJ determined that Plaintiff could understand, remember and carry out simple one or two step tasks. AR 21. In so finding, he adopted the opinions of three consultive examiners, all of whom determined that Plaintiff could perform simple, repetitive tasks. AR 281-282, 392, 594-597.

In April 2003, Dr. House examined Plaintiff and found that he could perform simple, repetitive tasks, resolve two and three step problems, accept supervision, interact appropriately with coworkers and the public and complete a fully day's activity without interruption from psychiatric problems as long as he is compliant with medication and treatment. AR 281-282. Similarly, in January 2005, Dr. Damania determined that Plaintiff could understand, remember and carry out simple one and two step job instructions in an unskilled setting and respond appropriately to coworkers, supervisors and the public "for the most part." AR 392. In October 2007, Dr. Michiel opined that Plaintiff could maintain attention and concentration to carry out one and two step job instructions, and relate to, and interact with, coworkers, supervisors and the general public. AR 594-597.

Plaintiff's argument is based on his belief that "treatment records that do not contain an opinion from a treating source render them inadequate to allow for a proper disability determination." Opening Brief, at 6-7. This "inadequacy," according to Plaintiff, triggers the ALJ's duty to recontact the treating source.

First, Plaintiff's assertion that an ALJ must recontact a treating physician any time the medical evidence does not include a treating source's opinion is incorrect. Instead, the ALJ's duty to recontact a medical source is only triggered where the medical record is insufficient to make a disability finding or the evidence conflicts to the extent that the ALJ cannot reach a conclusion. 20 C.F.R. § 404.1512(e) ("When the evidence we receive **from your treating physician or psychologist or other medical source is inadequate** for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.") (emphasis added); 20 C.F.R. § 404.1527(c)(3); *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).

A medical record that does not contain an opinion from a treating source does not, by itself, render it inadequate. While Plaintiff is correct that the Ninth Circuit, most recently in *Orn v. Astrue*, reiterated the deference due to a treating opinion, it does not follow that the absence of such an opinion automatically renders a medical record insufficient. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). Plaintiff's citation to *Tonapetyan v. Halter* is also unhelpful. There, the Court found that additional information about the claimant's mental impairment was necessary because the consultive examiner's report upon which the ALJ relied was unclear and specifically stated a more detailed report was necessary. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, however, the reports of the consultive examiners were clear, consistent and based upon their independent clinical findings that differed from the findings of the source at Fresno County Mental Health. *Orn*, 495 F.3d at 632-633 ("when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (internal citations omitted); *Tonapetyan v. Haler,* 242 F.3d at 1149 (9th Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations).

Plaintiff also fails to point to any evidence in the Fresno County Mental Health records that would contradict the RFC finding. Consistent with the diagnoses in the record, both from the treating sources and consultive examiners, the ALJ determined that Plaintiff's depressive disorder

14

and psychotic disorder were severe impairments. There was substantial evidence, however, that despite these impairments, Plaintiff could perform simple, repetitive tasks.

In his reply, Plaintiff points out that the Commissioner requested records from Fresno County Mental Health, as well as a statement regarding Plaintiff's limitations. He then argues that because Fresno County Mental Health only provided records, it did not fully comply with the request and the ALJ's duty to recontact the source was therefore triggered. Plaintiff is correct that the Commissioner requested records and a statement of limitations, as it always does when initially gathering information to decide a claimant's action. Again, that Fresno County Mental Health did not provide a treating source opinion as to Plaintiff's limitations does not automatically render the medical evidence inadequate in the first instance, nor does it change the fact that the three consultive examiner reports constituted substantial evidence. Plaintiff's suggestion that a treating source must always provide an opinion as to a claimant's limitations is simply not correct. See 20 C.F.R. § 416.912(e).

Accordingly, the ALJ's RFC finding was supported by substantial evidence and free of legal error.

B.     Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints.

In *Orn v. Astrue*, 495 at 635, the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan, 169 F.3d at 599* (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security

Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

The Court first notes that Plaintiff's argument is almost nothing other than boilerplate language and conclusory statements. Plaintiff simply argues that he testified to limitations, that treating sources "reported" the subjective symptoms, and that the ALJ failed to make an explicit, full and detailed finding supported by substantial evidence. Plaintiff does not point to any specific facts relied upon by the ALJ, nor does he further explain his argument.

In any event, the ALJ provided numerous reasons for questioning Plaintiff's credibility. He first noted Plaintiff's contradictory testimony about his ability to read during the hearing. Initially, Plaintiff testified that he could read a little, but could not read the newspaper. The ALJ explained, "But later in the hearing, when he complained his psychiatric symptoms prevented him from concentrating, he complained he noticed them particularly when he was trying to read- 'I can't remember what I've just finished reading.'" AR 22. When his attorney asked him about this discrepancy, he "answered evasively, saying he read to try to improve himself." AR 22. The ALJ correctly determined that this exchange undermined Plaintiff's credibility. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir. 1996).

Next, the ALJ explained that although Plaintiff reported that, because of pain, he could not sleep, perform household chores, concentrate, leave the house or be around other people, "that he was in jail eight months later suggests he *did* leave the house for a reason other than to go to the doctor." AR 22, 380.

Insofar as Plaintiff complained of crippling back pain, the ALJ cited the lack of objective evidence to support such intense pain. In fact, as the ALJ set forth, one doctor explicitly told Plaintiff that he would not suggest a disability because there was no evidence to support his pain.

16

AR 23, 351. X-rays in April 2003 and August 2006 were negative. AR 23, 288, 482. An MRI performed in September 2006 revealed degenerative disc disease but no significant central canal stenosis or neural foraminal narrowing. AR 23, 480. The ALJ also noted that Plaintiff sometimes had the cane for his examinations, but sometimes did not, even though he testified that he used it everyday. With or without the cane, he was able to walk without a limp. AR 23, 284, 588. Moreover, two of the consultive examinations, including the most recent examination in October 2007, revealed no evidence of a physical impairment and essentially no functional limitations. AR 23, 397, 590. While the ALJ may not rely on objective evidence alone to reject a Plaintiff's subjective complaints of pain, it is one factor properly considered in the analysis. 20 C.F.R. § 404.1529(b); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

As to Plaintiff's psychological complaints, the ALJ acknowledges that Plaintiff alleges he hears voices and has had "a lot of mental health treatment." AR 24. Plaintiff admits, though, that the voices are controlled with medication. AR 24. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility). Plaintiff also testified that he has suicidal thoughts frequently, but has not reported it to his doctors "because they've never asked." AR 24. The ALJ also explained that Plaintiff was moved to medication services only in 2002 because he failed to follow case management recommendations. AR 24, 345. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations of disabling pain and other symptoms not credible).

Finally, the ALJ noted that when Plaintiff was arrested in November 2003, he was thought to be feigning mental illness and suicidal tendencies to avoid the consequences of his arrest. AR 24, 381.

Based on the above, the Court finds that the ALJ's credibility analysis was supported by substantial evidence and free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Victor Molina.

IT IS SO ORDERED.

**Dated:  February 4, 2010**          /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE